Hamilton. Mr. Lowell, you may proceed. Good morning and may it please the Court, I'd like to reserve five minutes for rebuttal, please. Certainly. Instructed by the Supreme Court's and this own panel and this Court's cases that apply double jeopardy law, meaning that you look to see what happened below in a practical frame, you don't look in a hyper-technical fashion, you look to see the prior proceedings, looking at the record that includes pleadings and evidence and the arguments that made, looking at the Ash case and the Leach case here, which also instructs the Court not to adopt the government's view that you look to see whether there's any technically possible means to reconcile it in a way to go forward, you look to the opposite. The most rational, most common sense, and the least hyper-technical view of what happened below is what resulted in the reversal of this case two years ago when it was first presented before the panel, and which this Court was followed six weeks ago by the Supreme Court in the Snyder case. Because as you, Our Honors, said in that case, that is the one that was here before, as Hamilton notes, the travel act count did require a quid pro quo, and the jury acquitted him of that count. Instructing the jury on one count that does require a quid pro quo was required, but that means that others may have communicated that in those other counts there was not a quid pro quo. Mr. Lowell, can you help me with, and our panel, with predicate ways, questions that I have? I need to know who has the burden of proof. I think your client has the burden of proof. Is that correct, sir? We have the burden initially to come forward with an explanation that would apply both the Supreme Court's instructions and the Fifth Circuit's. Yes. And then the next question that you might anticipate is what is the standard? Is it preponderance, clear and convincing, beyond a reasonable doubt, and what case establishes the burden? This case may very well depend on that inquiry. You know, I have read all the cases, there's no doubt you and your clerks have, and I have never seen in any of them the definition that you're asking me about to finalize. I can't find it, and it seems like it very much matters. It does, but we are not without instruction. So let me give you two that I found to answer your question. First of all, in Leach itself, when there was a debate as to who has the burden and what the standard would be, the issue was the defendant said, you look to see what a rational jury might have done. The Court of Appeals then, when looked at what the government said, and the government suggests that you ignore the record and merely look to whether there was any technical possible means, we now know that that is at least the application as to how much proof on each side of the scale, whether it is, as you said, you know, preponderance or clear or probably can't be reasonable doubt because that would be only in the criminal case. I realize it's an appeal of a criminal case, but that wouldn't be the case. So I feel like there's no standard that I can tell you to look at from the court cases. What I can say is that once you come forward with the proof that I can put forward to this panel, then I think the court looks to see what is to not use preponderance or not to use clear and convincing. Let's look at the other possibilities. You look to see what a practical frame was, but that doesn't give you the weight. You look to see whether or not you're applying it in a hyper-technical way or a realistic way. It still doesn't give you the weight. If you look at analogies in the law as to when there is a burden of coming forward and given the context, I think you'd have to basically say it's a preponderance. It has to be a preponderance because it's at that threshold which would most protect what is a constitutional right. What is the constitutional right not to have a double jeopardy event occur. So if you look for the most effect of what is a very important right that's in the Constitution, would you do it at the highest burden or would you do it at the one that basically promotes that right? But nobody's ever said it out loud. No one has ever said it out loud, and it's pretty bizarre when you consider it. That it is preponderance. How can we say that even by a preponderance the jury decided to acquit Hamilton of the travel act count on the quid pro quo basis when they contain different elements? So again, when you look at it from the point of view of whether it contains different elements, then you're lapsing back, I think, to pre-Ash law where people could say this statute had these four elements and this statute had these two elements and they're not the same elements. But we know... But isn't it possible that they acquitted based on the intent and the phone call the day before versus what was going on the day after when he actually wrote the check? In other words, isn't it very possible, a preponderance, if that's the standard, that they acquitted on that ground, particularly given the jury notes that came out? And that was going to be another question. Do we consider those? Let me respond to both parts of that question. Yeah, I'm sorry to throw a compound at you. No, I'm trying, because that's what you get to. In other words, when you're trying to figure out and divine what the jury did, you'll have to take into account some things. So let me answer the first part of your question first. What you do, it seems to me, is to remind this court that the government has now pivoted twice before your honors. The first pivot was on the appeal when they came forward to try to save the 666 count and then said, by the way, that count had to be bribery because there was, quote, overwhelming evidence of bribery when they tried to insist that that count could be saved on a harmless error theory. Now they're coming forward and they pivoted again to try to eschew that by saying, oh, when we said there was overwhelming evidence, we didn't mean there was overwhelming evidence on the phone call that occurred on August 2nd. We must have meant only on August 3rd. So to answer your question directly, you look at what the court cases said as to what you look at. And I want to ask the court to remind itself of the Leach decision, where it says we cannot look at what might have taken place if the trial had been handled differently, but only what took place at trial. And so with that, your honors, let me tell you what you will see. As the court is going to look at the record, your decision in Leach is further informative of the following thing. Just as in Leach, when the government tried to save its second count by trying to distinguish between two counts with different intents or with different points of time, there the court found there was a comprehensive scheme at trial, and here too as well. Right off the bat, the U.S. Attorney's Office presented that call on the second as part of that comprehensive scheme, Judge Wilson. I want you to look at a record of appeal at 2880-81, and that in their opening they argued, Mr. Hamilton asked for a favor, and then agreed to meet the next day. Then in their opening they wrote, the events between Mr. Carraway and Mr. Hamilton around this bribe are all captured in two recordings. They made no distinction in the intent between the two days. They did it again. In the closing, they argued, and you remember that the evidence, Mr. Hamilton called him repeatedly, calling his office, talking on the phone, and they say talking on the phone for what purpose? To get the meeting set up for the next day. Then they said, the evidence here is a finite set of evidence. Look at the two recordings. In fact, they said, but this call and videotape are the finite set of evidence. And finally, they said to the defense's argument that there was only one possible intent on both days, this is what they wrote. I'm sorry, this is what they said. They said, no evidence that the defendant made that call and intended the offer of bribe, as the defense has suggested. Well, that was one of the suggestions defense counsel made, as it concerns count for. I disagree. I disagree. Time and time again, at the presentation of trial, if you look at the instruction, to look and see what happened below, you'll see that the government presented this as a comprehensive scheme with the intent on both days being exactly the same. Now on appeal trying to save the count, they want to come up with a hypothesis that what happened was that there was no intent on one day, and yet there was intent on the other. Well, but that hypothesis gets us right to the jury notes that came out. It does. Because there's support for that hypothesis. There's support for the analysis if you apply a jury note to try to glean. And I don't need to tell this Court again, because you have as many cases on what you do with jury notes as there are cases to be decided on that issue. So let me suggest the answer to that, Judge Wilson. On that, I would ask you to consider that in a jury note, you're in double jeopardy land, and we can be instructed by the Supreme Court's decision in Yeager. Remember, in Yeager, they were trying to glean the importance of a hung count. Right. And I guess the specific part of Yeager is the other relevant material. Yes. Right? They didn't really specify dispositive material or material at trial. They just said a holistic approach of trying to figure out what the jury decided. Holistic approach. That's my word, not their word. Yes, I get it. It's not a bad word, but I think it's a holistic approach, but minus something that defines you to look at the bottom of a cup and see what tea leaves mean. And in Yeager, they said the hung count would presume an ability to identify which factor was at play in the jury room. I can tell you that you can say that exact same phrase, take out the word or the words hung count and say jury note. And you know that because, for example, in this court's Gonzalez-Dominguez case, a procurium decision in which Judge Elrod sat, the issue was a defendant trying to say, we can take this note to show that they accepted my defense theory. And what you know about jury notes, you said in that opinion, and what you said is all you know is that some or one or all of the jurors at some point believed the defendant's testimony would be, quote, pure speculation, end quote. But what if the jury notes as here buttressed the logic that we were talking about earlier, and maybe some of the other facts in the case? In other words, it's true that the jury could have found, I guess with regard to the Travel Act, that Hamilton didn't use a facility in interstate commerce. Well, he made a phone call and et cetera. So maybe that's not an issue. But could have also said the day of the phone call, he didn't have the specific intent to bribe. Or they could have found the day of the actual check being written, he didn't have the quid pro quo intent, right? But the jury notes actually address the second scenario, which is, you didn't have the intent during the call. And it indicates that they're focused on that, at least to some degree. And it's an acquittal . . . But you used the pronoun they. And that's where this judge's, this court's opinions and other courts' opinions as to how to glean a jury note comes into play. What do you know about that note? You know about the note the following. First, before I get to the note, I do want to point out the reason on the record that you can't accept that point of view, is that if you look at what was said on August 2nd, we have a tape, you have a transcript. What did Mr. Carraway say? What did Mr. Hamilton say? The words are virtually the same. I want a favor. Then he talks about his health. That is Mr. Carraway. Then Mr. Hamilton . . . Wasn't it on August 3rd when they actually talked about 6200 and that would help right now? Absolutely. I mean, it became more concrete that day, if I'm remembering right. Well, what became concrete is the payment of a check, which nobody denies occurred on the 3rd. What precipitated that check was a conversation that was identical in many ways to what happened on the 2nd. I want to talk about paid sick leave. Mr. Carraway wants to talk about his health. They talk about how it's been on the city council. What you can glean from the payment of the check on the 3rd is a number of things. It was paid. Look at the words before and the words of the 2nd. You will find in neither conversation the words that this court knows would amount to a quid pro quo. I will help you to get this on the agenda if you do something. It was, you're sick, you've been good, you'll get through this, you're a survivor, and then it's, what can you do? So that's number one in terms of looking at the record, but I want to get back to the note. What do you know about the note? The deliberations had occurred and they started on the 24th of June. Four days later, the first note came in in terms of the intent. An hour later, they asked if guilty on 3, is it guilty on 4, and then in that note they also put in the famous phrase, because of the use of interstate travel facilitating the act. How do you not know for that one juror who was not sure, was holding out in a very confusing travel account, that that was based on a different city? So I guess your answer would be that under Yeager, the jury notes can't be relevant material, other than that. Well, I don't think you make an exception for this long line of what you do with jury notes in a double jeopardy constitutional protection case. Why would you do that? You would do the opposite. Well, I mean, I guess does it go to the preponderance? In other words, is this an evidence weighing kind of thing? And if the jury notes buttress other evidence that suggests the same result, then could they be the relevant material? Could they be properly considered? When you say properly, that puts a lot of weight on the And I guess I would say to you is that I don't see how you can start gleaning a jury note when you say no more than the following. If we knew that all the jurors in the room after four days of deliberation were sitting around saying, we're confounded, we don't know what to do with these two different counts, we need to figure it out, and all of them signed a note, then you could basically say, should that be part of the holistic approach? Should that be part of what we consider? Is that properly considered? But as you pointed out in the per curiam case, all you know is that one or some of these members of the jury at some point, and we now know when, did that. Now, if you're going to apply that and you're trying to prevent what the courts say is to avoid speculation, what could be more speculative than to freeze that moment in time and decide that that's dispositive of the issue? And it goes back to, again, something that I think Yeager said in terms of how you would find I want to interrupt you for a second. Yes, sir. Would you state as simply as you can why you think there's collateral estoppel to retry your client? There is collateral estoppel to avoid it, to use the, if you will, pre-Double Jeopardy phrase, collateral estoppel from the Powell and other cases, very much because in all the cases we've done, let me ask you, let me put it to you this, Judge Weiner. If the government's view of how you apply this is correct, then all the cases we've cited, the case about there being two counterfeit bills, the case about there being a different intent when somebody broke and entered and then committed the rape thereafter, the case about the different robbery victims would have to be decided the different way because you look at the practical, rational, what makes the most sense. And unlike some of the other cases, this is pretty easy. Count three allowed, based on the government's argument, a conviction for something other than a quid pro quo. Count four and the instruction given by the court actually used the word gratuity. They said you have to find a this for that exchange and not a gratuity. It actually used the word. So if you're putting any meaning to the case law that talks about how you give effect to the Double Jeopardy clause, you have it right there. It is the elephant in the room. It is the most rational and logical way other than gleaning what a jury note could mean on four days later if it was one or other jury. Meaning whether when the language of both days, and I see my time is, language of both days, look at the record. I know that the check was given on the second day, but what led up to it was the same kind of conversation about paid sick leave and all that occurred. So Judge Wiener, what precludes the government from retrying is the application of the Supreme Court's law and Ashe and Yeager, your case, Leach and others, to take that kind of practical effect. And before I sit, if you have another question before I sit, I think one of the other things the Supreme Court said, and this will go to that how do you apply it, Judge Wilson. They said, the fact that the petitioner has already survived one trial should be a factor cutting in favor of rather than against applying a Double Jeopardy bar. Mr. Lowell, you save time for rebuttal, sir. Yes, ma'am. Thank you. Mr. Gilstrap, you may proceed, sir. Good morning, Judge Elrod. Your Honors, may it please the Court, Stephen Gilstrap on behalf of the United States. As this Court knows, after the first trial, Mr. Hamilton was convicted on three Section 666 counts and acquitted on a Travel Act count. This Court, finding jury charge error, reversed for that reason only and said it is for that reason alone that Hamilton must be tried again. After remand, this case went back and Hamilton argued that he actually couldn't be retried again on one of the counts based on this Double Jeopardy claim. Did we actually say must be tried again? That is in your concurrence from the denial of on Bonk, Your Honor. But not in the original opinion? Not in the original. It just said proceedings. Right. Consistent. It is in the concurrence from the denial of on Bonk. So that's not what the Court said in this case, arguably. Thank you for, I apologize. No, go ahead. For clarification, Your Honor. When it came back, Judge Lynn held a hearing on the Double Jeopardy motion and firmly rejected Hamilton's claim, finding that the Caraway Bay 666 claim and the Travel Act count concerned different conduct on different days and involved different elements. For the Travel Act count, Hamilton's use of a telephone on August 2nd to facilitate the bribe, and then the bribe itself, the 666 count, on August 3rd. Judge Lynn, who knows the trial record well, who's been with this case since 2019, correctly applied the Ashby-Swinson analysis and got it right. This Court should affirm. Do you have any thoughts on the burden of persuasion in this case? I have a few, Your Honor. I agree with Mr. Lowell that there is not a case that I have found that says it's beyond a reasonable doubt. It's clear a convincing preponderance. There's no question that Hamilton has the burden. And while I do not have a case that specifically says what the standard is, I can tell you the case law makes clear that it is a high one. And I'll point the Court to a few of this Court's cases that I think kind of— A high one to avoid double jeopardy? Yes. Because it has to be— No, not to be—for the government—I mean, that's not a good sentence, to avoid double jeopardy. Go ahead. You, go ahead. Sure. So what this Court has said, even though it hasn't used the phrase clear and convincing or beyond a reasonable doubt, has said in United States v. Sarabia, the relevant inquiry is on what the jury must have decided, not what it may have decided, what it must have  Again, Hamilton's burden to show what it must have decided. As this Court said in United States v. Birch, if doubt exists, then the defendant loses. Or as this Court said in Garcia v. Dretke, quote, where there is more than one possible reason for this jury's verdict, and the Court without extrasensory perception cannot say that one is necessarily inherent in the verdict, the doctrine of collateral estoppel doesn't apply. Why isn't it necessarily inherent in the verdict that they treated these differently? Because they were specifically instructed in Count 4 that merely gratuity does not constitute a violation, but there was no such instruction in Count 3. And that is the thing that we—we must always assume that the jury applied the instructions that they were given, barring explicit evidence or some amazing circumstantial evidence that they didn't, but usually explicit evidence that they didn't. So under the charge that government wanted, it didn't include that. And so we have to assume that they made that distinction. If that were the only distinction between the two counts, Judge Elrod, I would agree with you. But it was not the only distinction between the two counts. And that's why when Mr. Lowell says, oh, if you agree with the government, you'd have to overrule all the cases cited in the brief, that's just simply not true. What are these other distinctions of which you speak? Two, to be specific, that we outline in the brief, Your Honor. First, and this goes to some of Judge Wilson's questions, the timing of the corrupt intent. For the Travel Act count, the jury had to find that Hamilton had the requisite corrupt intent on August 2, 2018, when he made the phone call, when he used the facility of Interstate Commerce. For the 666 count, the government didn't have to prove that he had the corrupt intent until the bribe was actually given, the $7,000 check was written. And you're arguing these are discrete times at this point? I'm arguing that they're discrete times. Obviously, it was the government's theory at trial that the phone call was enough to show corrupt intent. You argued that they were continuous, one big transaction, and repeatedly told the jury it was one big thing, and that they weren't two discrete things. Why should you get to argue the opposite here today? Well, because we believe the jury found different. And what that— How do you know that? Based on the jury notes? What if we can't consider the jury notes under our precedent and the Supreme Court precedent? There's nothing in the Supreme Court precedent or in this court's precedent that says you can't consider the jury notes. Why should we consider the—okay, well, I—can you talk about our opinions, please? And then, can you say, how would it possibly be appropriate to talk—to rely on the jury notes when we can't even rely upon the answers in the verdict? I mean, we can rely upon what the court says, what you said, what he—what the trial lawyer said. We're not allowed to rely upon what a particular juror might have thought at some point in time leading up to deliberation. And we've said that. I will try—I will try and address all those points, Your Honor. First, all of the cases cited in the briefing, Sanchez v. Davis, the Garcia-Dominguez case, they don't say that jury notes can't—can't be considered. In fact, those cases talk about the jury notes. And they make the point that while those jury notes may raise the possibility that this is what the jury was thinking or looked at or et cetera, it didn't in Sanchez v. Davis, for example, rise to the level of probability to meet the Strickland standard. But here, again, it gets back to the burden. It's Hamilton's burden to show what the jury decided. And the fact—if there is a possibility of another basis, then he hasn't carried that burden under this court's case law. But if you can't use a hung jury, and that's an actual determination, how could you use what some juror was thinking about along the way? So hung counts are different because here we're not asking the court to look at what a hung count means. We're asking the court to look at the differences between count three and count four. And there are essentially three that were argued about at trial. The main point here is, yes, the government made the argument that he had the requisite intent on August 2nd before the jury at trial. But Hamilton argued the exact opposite. And that's what matters for the purpose of the double jeopardy analysis. It was a disputed issue at trial. Well, the fact that a juror might have had a question about how counts three and four work together at some point in the deliberations doesn't tell us how they decided the case. I agree with you, Your Honor. I wholly agree with you. And that's why it gets back to the burden. It's not the government's burden to show what they decided or why they decided. Well, we have to only look at the thing that could tell us something, which is the charge. You look at the charge, you look at the arguments, you look at the evidence. But this court's case in El Mazan says you look at the entire record, and that includes jury notes. They're not any sort of determination. Jury notes are not a determination. And they are perhaps one juror's thoughts at some moment. I don't — it seems like a very — what court has ever held that you could look at these and that that would be dispositive in a double jeopardy situation in all of America? I'm not aware of any court saying that it can be dispositive. I'm also not aware of any court saying you cannot look at jury notes to decide whether a basis for acquittal was possible. But doesn't — doesn't the — the same — don't the same infirmities about the jury note that you and Jajel wrote a talk about and I talked about with counsel opposite, don't they fold right into Yeager's reasoning, which is to say we can't read tea leaves, we can't ascertain what we think the jury was doing when they hung on a verdict, just as much as we can't read into what note comes out from the jury room authored by whomever and precipitated by whatever? I mean, we just don't know those things. And the lack of knowledge, the lack of clarity is all — all that needs to be shown. What's your best case to support that, though, using a jury note? Using a jury note — and I will concede this is not in the briefing I founded in preparing for oral argument — it's United States v. Williams. It's a 2006 decision from this court, 449 F3D 635. Did you cite this in your brief? No. Okay. Then opposing counsel within three days can submit a 28-J on it. Go ahead. I appreciate that, Your Honor. In full disclosure, I did not. I found it in preparing for oral argument. But in addressing Judge Wilson's question, it is a double jeopardy case where the defendant was making an argument about that the jury's failure to reach a verdict amounted to silence that implied an acquittal. And this court looked at jury notes in that case. It says, Williams' reliance on green false shortwear is here. The jury was not silent on the greater aggravated offenses. Both jury notes, as well as a subsequent poll, plainly indicate that the jury was hopelessly deadlocked on the injury factors. So in a double jeopardy analysis, this court is considering jury notes. You don't have to make the determination — and again, this gets back to why the burden is so important here. I think the answer about jury notes is a jury note probably can't get you to saying that's what the jury necessarily decided, if it's your burden to show that. But what the jury note can do is it can say, this other possible basis for acquittal, the different timing of the corrupt intent, was something that was on the jury's mind and it was a possible basis for acquittal. And if there is another possible basis for acquittal, then Hamilton has not met his burden. So in your view, the case is fairly simple and straightforward. There are three possible grounds or prongs on which they could have acquitted on the Travel Act. I mean, I went through that with counsel opposite. One, probably not an issue, did he use interstate commerce or interstate transmissions? Two, did he have the intent the day of the phone call? Three, did he have the intent the day of the check? You're saying that as long as grounds one or two could have been, then therefore he could be tried again on the issue that is implicated by count three, or prong three. Because the verdict itself, the general verdict doesn't tell us that that's, that the bribe gratuity distinction is what the jury necessarily decided. And I want to make a point. But then we're right back to the question about what is the burden here? How much does there have to be? I mean, is it a, just a, just a, well, we can't answer this question. I would suspect that's true in most cases, right? Right. And that's why courts have said it's a rare, it's a rare situation where a defendant can meet this burden. And one point on the Travel Act, and this gets to the claim that the government's not looking at this with realism and rationality. The government's not arguing that the jury could have acquitted based on the view that they didn't think the phone call was the use of a facility of interstate commerce. That was never disputed at trial. No one ever argued about that at trial. And so that's not a realistic reason. Well, it's really the second basis or the third. So, and this, the two bases, and I want to be clear on this, it's two things. It's did he have the requisite corrupt intent on August 2nd versus August 3rd? That's one. The difference between those, the timing of the corrupt intent. And the second basis, which Mr. Lowell didn't talk about in his reply brief and didn't mention this morning, is the jury could have found that the call itself was inconsequential. That was something that was argued about at trial, specifically in closing argument. Let me get the page right. Mr. Lowell argued, and this is at ROA 4553, that call has to be the basis for the charge. And the instruction reminds us that the call has to be more than inconsequential. So these two additional bases, the timing of corrupt intent and whether the call was inconsequential or not, something that Mr. Lowell hasn't responded to in any of the briefing or thus far this morning, are two bases on which the jury could have acquitted that have nothing to do with the bribe gratuity distinction. And the existence of those alone, without even any jury notes, is enough to where he cannot meet his burden to show that the jury necessarily decided that the $7,000 check was a bribe and, or a gratuity and not a bribe. What in the record would say that something changed between August 2nd and August 3rd? The idea that you have no intent to bribe on August 2nd, then why would you have an intent to bribe on August 3rd? What in the record supports that? It seems like your actual thing that you argued to the jury, that it's all one thing and it either is or isn't, is the way it actually works. Well, the thing that makes it different, and this is what distinguishes the Griggs case that Mr. Lowell relies on, is we have the actual video of the August 3rd meeting between Carraway and Hamilton. We have the video where Hamilton's saying, let me know what I can do for you right now today. He's saying, as he gets ready to write the check, now you're going to follow through with the mayor, right? And as he's writing the check, he says, we're going to write something down in the memo line for posterity's sake so I can come up with a reference if anyone ever asks. You have the whole, I think it's 45 minutes or so, meeting on video on August 3rd showing that Hamilton, as this court said in its original opinion, happily obliged to write a check. Isn't all this impugned by the argument you made, though, that the intent was the same over August 2nd and August 3rd? In other words, that view of the evidence has got to overcome the arguments the government made in presenting its theory of the case. Again, this was a disputed theory. The government's position at trial was the transcript of the call on August 2nd was sufficient to show a corrupt intent because Hamilton calls asking for a favor and all these sorts of things. The defense took issue with that. They disputed it. They argued it in front of the jury. In opening, Mr. Lowell said, on August 2nd, Rule was working hard for one thing and one thing only, to get a ballot initiative. He raised no other issue on the call. While the government said that there was a corrupt intent across the board, believed that the evidence showed that, what the trial shows us, along with the jury notes, is that it's at least possible, which again, if there is a possibility, if there is doubt, then raised by Hamilton that, oh, I didn't have corrupt intent at the time of the call, that that was a basis on which the jury could have acquitted. And since that is an additional basis that has nothing to do with the bribertuity distinction, along with was the call inconsequential or not, because those additional factual disputes exist, we cannot know for certain. We cannot know why the jury acquitted. If there is another basis, then he cannot show that necessarily inherent in the verdict is the position that the jury went on his preferred basis. And that's what makes the Ash case, the Griggs case, the other cases cited in the briefing different. In those cases, the Yeager case, because in those cases, there was one sort of main factual dispute. In Ash, it was about identity. It was, was he actually there at the time of the robbery? In Yeager, it was whether he actually possessed inside information or not. Where there's that single factual dispute, and the jury renders a general verdict, this court can say, well, that was the main disputed issue, or the only disputed issue, better said. And because that was the only disputed issue, we can look at a general verdict, and we can say that necessarily inherent in that verdict is the determination that the government lost on that issue. But here's, there's more than one factual distinction. What's happening in the Snyder case? So the Snyder case from the Supreme Court confirmed this. Right, I know, but what's, are they retrying the robbery there? I, I'm not, I'm not sure, um, as— Alleged bribery? I'm not, yeah, I'm not— I'm, I'm not sure of the procedural history. What's, what's the procedural history? I mean, if we don't, you, it's my understanding that neither one of you think we create a circuit split. We don't have much law on this. We don't even know what the standard of burden of persuasion is. So I'm just wondering, so is it correct that we wouldn't create a circuit split no matter what we do in this case? Whether we consider the jury notes, whether we find whatever standard we apply, there's not circuit split. So I'm just wondering, what's the Seventh Circuit doing? I'm, I'm not aware of the procedural history.  Mr. Lowell says he has an answer. I have. So that's, um, what is going on in this, when is this trial set now? The trial is not set. It's waiting for this appeal? Because of the interlock. It was originally set for the fall or something, or? I believe October, early November it was set for. And when the district court denied the double jeopardy motion, Mr. Hamilton filed an interlockatory appeal and stopped everything in the trial court. Okay. So, okay. But this, is this, um, expedited or anything? The government sought for it to be expedited, um, given the, the age of this case and the, the issues. Um, this court denied expedition, um, and, um, so we're on a regular schedule and there was a trial date, but there isn't one now. That's correct. Okay. That's correct. Anything else you want to say, Mr. Gilstrap? Just, just to sum up, um, in covering the point I was covering with Judge Wilson, the fact that three, we'll say three bases exist for the acquittal. One being the bribe gratuity distinction, one being the timing of the corrupt intent, one being the inconsequential nature of the phone call. The fact that there's more than one means that Hamilton can't meet his burden. We don't need the jury notes. We don't need to speculate about what the jury actually found. The jury notes simply confirm, without any speculation, that this was an additional disputed basis at trial, the timing. So we don't have to get to the jury notes at all if we're concerned? No. The jury notes simply confirm the government's view that there was an additional basis. Because, because, I mean, the, in 1785, Lord Mansfield was refusing to rely on juror affidavits to impeach a verdict by a coin flip. I mean, the idea that we don't invade the province of the jury deliberations and try to surmise what they're thinking at any point in time is, is, is an old one in the, in the Western tradition of juries. And so, it would seem like this would march us towards invading that province if we were to consider those jury notes. Again, in the double jeopardy context, this Court has said you look at the entire record. There is a case, the Williams case, where they do look at jury notes. And none of the jury note cases say, we can't even look at those. They say, they recognize that the jury notes simply raise a possibility. And again, at the end of the day, the existence of a possibility for an acquittal on an issue different than the bribe gratuity distinction is enough to defeat Hamilton's claim. Thank you, Your Honors. Thank you, Your Honors. First, let me answer your question. Snyder was presented at trial as a pure gratuity case, and consequently, there was not an issue that needs to be thought of, as we do here, as to whether there could have been a distinction. So I think that's the end of that case, as it gets remanded for further conversation. I have a few things to respond to what Skilsap said, so let me jump right in. First of all, on the elements that you asked Judge Wilson, and he responded to the different elements, it's in our reply brief at page 11 that we point out the precedent for the fact that we don't look to see whether there are different elements anymore when you pass through Ashe and Yeager, and I point that out. The second thing I want to do is address what was said about an argument made below. Unlike the government, or I should say, like the government, the defense did not change its theory at trial. It had said, contrary to what you just heard, let me tell you the things that the defense said about why we rebutted their comprehensive scheme concept, that this was one overall event coinciding over two days. The defense said in its opening, the events between Mr. Carraway and Mr. Hamilton around this bribe, I'm sorry, the defense said that there has never been an intent between Mr. Hamilton and Carraway on either day. For example, at the record 2894, at no time did Mr. Hamilton make a corrupt agreement. The next thing that was said, the check on August 3rd came about because of the call on August 2nd. The defense said, you will see it was not the purpose of rule calling on August 2nd or coming on August 3rd. The defense said that the exchanges that occurred between Mr. Hamilton and Mr. Carraway on August 2nd were the same as August 3rd, and you will not find any conversation or phrase that amounts to a quid pro quo. Mr. Lowell, I think the government freely admits that this is contra to their theory and that they're arguing the opposite of what their theory was about it being. What difference does it make? What it makes a difference is if you're trying to glean what a jury could have thought in the most rational and practical way, the Supreme Court in Ashton Yeager and your case here in Leach asks you to look at the record of what you can see. What you can see are two conversations, the transcripts of which will likely be the same, and to answer your question, yes, again, the check's written on the 3rd, but what precedes it is, among other things, Mr. Carraway doubling down on his and his mother's health, as opposed to Mr. Carraway saying, I hear what you're saying, Mr. Hamilton, but in order to do what you want, I need you to do this. That sounds like magic words. He talks about how you could really help me today. I'm just wondering, as we're talking, could the jury look at the conversation on August 3rd and say, well, comparing the conversation on August 2nd, irrespective of each side's arguments or theories and how they presented the evidence, could the jury not look at those two pieces of evidence and say, well, it wasn't very clear on August 2nd, but it gets real clear on August 3rd? Well, they could see what gets really clear on August 3rd. Well, the intent for a quid pro quo, I mean, I guess. But there's no difference in the words that Mr. Carraway says to make it into a quid pro quo between the two days, when Mr. Hamilton on the 2nd starts with, will you do me a favor? On August 3rd, Judge, I could see that the jury could come up with the following explanations for the writing of the check, given what you read. First, it could have been charity. We've heard that Mr. Hamilton is a charitable person. Second, generosity. Third, sympathy. Fourth, and there's conversation that if you want to glean what was meant, they talked about Mr. Carraway's complete service on the city council for all those years and how they worked together. That could have been the corrupt reward if you were applying a gratuity. It could be charity. It could be generosity. It could be a gratuity, even though, in fact, the judge says, gratuity in the instruction. What it can't be, if you're trying to glean after the fact from a record and looking what the government presented, which is why it's so important to look at what they argued, even in their last moments in rebuttal, is that it can't be a quid pro quo. I mean, you could hypothesize that somewhere, but then you're doing what the court said don't do. Do a common sense approach. Don't look hyper-technically. Look at the record, not as to whether there's a technical possible means, but what it looks like actually occurred. To use the Bravo case in the First Circuit, don't bend over backwards to find a way to obviate the purpose of the Double Jeopardy Clause. And let's move to the Second Circuit, not as good as the Fifth, but it does have a line that I think comes into play when you're figuring out the burden, where it says, and I can't ever say the name of the case right, Mespolid, where it says, fundamental considerations of fair play do not place an unjust burden on the defendant to require him and then to meet the burden. The issue sought to be excluded is not the sine qua non of a conviction in the second trial. Now, that is not the law, as the government argued, that it had to be the one pivotable point. The last piece I'll say, if you don't have any other questions, is again looking at applying the note issue. And I think the best thing to say is look at the time frame in which that note came. And if it doesn't mean anything to you, it means that it has to be that perhaps on that day, at that time, one juror had a question to try to reconcile two counts. I will look at the case that Mr. Gilsap said, but even from what he said at the podium, it seems to say that you can certainly look at a note to see whether a jury says I'm deadlocked and what it's deadlocked about, but that note, and I'll look to see if it's true, doesn't seem to be asking for guidance on whether a substantive difference applies between two counts. So in conclusion, apply what you have all said in your cases and look at the practical effect. And the clearest example of the rational conclusion is the different instruction between quid pro quo and gratuity. Thank you very much. We have your arguments. This case is submitted and we appreciate the